# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WENDI C. GILPIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-11-208-FHS-SPS |

## REPORT AND RECOMMENDATION

The claimant Wendi C. Gilpin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 7, 1980, and was thirty years old at the time of the administrative hearing. She has a high school education and past relevant work as a child care attendant, clothes sorter, and cashier (Tr. 334-35). The claimant alleges that she has been unable to work since December 28, 2008, because of manic depression, borderline personality disorder, obsessive compulsive disorder, and ovarian cyst syndrome (Tr. 73).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 9, 2009 and June 6, 2009, respectively. The Commissioner denied her applications. ALJ Deborah L. Rose held an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 27, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four and, alternatively, step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform medium work, *i. e.*, she could lift/carry 25 pounds frequently and 50

pounds occasionally, stand/walk/sit for six hours in an eight-hour work day, and push/pull 25 pounds frequently and 50 pounds occasionally (Tr. 19). The ALJ found, however, that the claimant had the following physical limitations: i) only occasionally climbing stairs and ladders, balancing, stooping, and crouching; ii) never climbing ladders, ropes, or scaffolds; and iii) frequently kneeling and crawling (Tr. 19). Further, the ALJ found that the claimant had the following mental limitations: i) she is able to understand, remember, and carry out simple "and some, but not all, more detailed instructions under routine supervision;" ii) she is able to retain sufficient focus to complete work-related tasks that do not require extensive contact with the general public; and iii) she is able to relate incidentally and for work-related purposes to supervisors and coworkers (Tr. 19). The ALJ concluded that the claimant was able to return to her past relevant work as a clothes sorter, but found in the alternative that there was also other work the claimant could perform in the national economy, *i. e.*, dishwasher and hand packer (Tr. 24-25). Thus, the ALJ concluded that the claimant was not disabled at step four and, in the alternative, at step five (Tr. 25).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider her obesity in accordance with Social Security Ruling 02-1p; (ii) by failing to properly consider the opinion of state consultative examiner Dr. Shires; and (iii) by failing to properly analyze the treating physician opinion of claimant's mental health provider Dr.

Moore. The undersigned Magistrate Judge finds that the ALJ erred by failing to properly analyze the medical evidence of record.

The claimant began receiving mental health treatment at CREOKS on May 27, 2009 (Tr. 290). A treatment plan dated May 18, 2010 reveals that claimant had been diagnosed with bipolar disorder, depressed, with psychotic features, post-traumatic stress disorder, and panic disorder (Tr. 290). Her GAF was assessed to be a 53, and her treatment plan included twice monthly group therapy sessions and monthly individual therapy sessions (Tr. 291). Treatment notes made during her time of treatment at CREOKS reveal that claimant felt unable to control her moods and experienced depressive episodes characterized by an lack of desire to get out of bed (Tr. 283, 285). Claimant reported feelings of lethargy caused by her medications, but that she was not taking one of her prescribed medications, Abilify, because of cost (Tr. 288). Her prescribed medications included Trazadone, Prozac, Abilify, and Fluoxetine (Tr. 287-89).

On July 13, 2010, Dr. Kenneth J. Moore, Ph.D. completed a Mental Residual Functional Capacity Questionnaire (Tr. 294-98). Dr. Moore wrote that he saw claimant weekly for sixty minutes per session, and claimant's diagnoses included bipolar disorder, depressed, with psychotic features, post-traumatic stress disorder, and panic disorder (Tr. 294). Dr. Moore wrote that the claimant "presents with psychotic features – seeing and hearing events normally not hear or viewed by others" and noted that her prognosis was poor to fair (Tr. 294). Among the many signs and symptoms exhibited by the claimant, Dr. Moore noted anhedonia or pervasive loss of interest in almost all activities, feelings

of guilt or worthlessness, impairment in impulse control, difficulty thinking and concentrating, emotional withdrawal or isolation, hallucinations or delusions, manic syndrome, pathologically inappropriate suspiciousness or hostility, and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week (Tr. 295). Further, Dr. Moore found that claimant was unable to meet competitive standards (defined as an inability to "satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting") regarding the following activities: i) maintain attention for two hour segment; ii) maintain regular attendance and be punctual within customary, usually strict tolerances; iii) complete a normal workday and workweek without interruptions from psychologically based symptoms; iv) perform at a consistent pace without an unreasonable number and length of rest periods; v) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; vi) deal with normal work stress; carry out detailed instructions; vii) deal with stress of semiskilled and skilled work; viii) maintain socially appropriate behavior; ix) travel in unfamiliar place; and x) use public transportation (Tr. 297).

State reviewing physician Dr. Ernestine Shires, M.D. completed a Physical Residual Functional Capacity Assessment on August 4, 2009. Through a review of medical records, Dr. Shires found that claimant was capable of occasionally lifting 20 pounds and frequently lifting ten pounds, standing and/or walking for six hours in an

eight-hour workday, sitting for six hours in an eight-hour workday, and unlimited pushing and/or pulling (Tr. 275). Further, Dr. Shires found that claimant could occasionally climb ramps and stairs, balance, stoop, and crouch and could never climb ladders, ropes, or scaffolds (Tr. 276).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at

1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ summarized Dr. Moore's findings in her opinion regarding claimant's mental limitations, but ultimately held that his opinion was entitled to "no significant weight" because "his treatment records do not show the claimant is impaired to this level of severity." (Tr. 24). The ALJ's evaluation of Dr. Moore's opinion was deficient for several reasons.

First, the ALJ failed to discuss whether she considered Dr. Moore to be a "treating physician" under applicable regulations. See 20 C.F.R. §§ 404.1527; 416.927(c)(2) ("Generally we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). In any event, whether the ALJ characterized Dr. Moore's opinion as a treating physician or not, she was still required to analyze the opinion by considering the factors set out in 20 C.F.R §§ 404.1527; 416.927. *See Langley*, 373 F.3d at 1119

("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using *all* of the factors provided in [§] 404.1527.'") [emphasis added], *quoting Watkins*, 350 F.3d at 1300. *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must . . . consider a series of specific factors in determining what weight to give any medical opinion.") [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites not law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

In addition, while the ALJ mentioned the opinion of state consultative physician Dr. Kathie Ward, Ph.D., she failed to include in her opinion the fact that Dr. Ward wrote the following in her recommendations:

> This claimant is motivated to continue treatment with her provider at CREOKS. Without continued treatment, the risk for emotional decompensation appears significant. Even with treatment, Ms. Gilpin's issues as described would appear fairly resistant to improvement. Her prognosis is guarded.

(Tr. 256). Dr. Ward also found that claimant would be unable to manage benefit payments on her own behalf because of her history of manic spending (Tr. 257). It is apparent that the ALJ improperly ignored salient points of Dr. Ward's medical opinion.

*Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Moreover, the ALJ failed to discuss what weight, if any, she was assigning to Dr. Ward's opinion. *Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("'[T]he RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.*'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 7 [emphasis added]; *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ also failed to even mention the opinion of state reviewing physician Dr. Burnard Pearce, Ph.D. even though she apparently adopted his opinion in her RFC, as her RFC findings contain a word-for-word recitation of Dr. Pearce's written comments (Tr. 19, 260). In this vein, the ALJ failed to discuss why she was adopting the opinion of a

state reviewing physician over the opinions of both a state examining physician and the claimant's own mental health physician. *Shubargo v. Barnhart*, 161 Fed. Appx. 748, 754 (10th Cir. 2005) ("[T]he agency requires ALJs to weigh all medical source opinion evidence and explain in their decision why they rely on a particular non-examining agency expert's opinion when opinions are conflicting . . . We conclude that this case must be remanded for the ALJ to consider and discuss Dr. Woodcock's medical opinion and to explain why he rejected it in favor of other non-examining consultative opinions.") [unpublished opinion], *citing* 20 C.F.R. §§ 404.1527(f); *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Turning to the claimant's physical limitations, the ALJ wrote the following regarding the opinion of state reviewing physician Dr. Ernestine Shires:

> As for the opinion evidence, the State agency medical consultant limited the claimant to light work. However, I do not find that supported by the objective medical evidence of record or even by the claimant's allegations.

(Tr. 23). There is no other mention of Dr. Shires' opinion or findings in the body of the ALJ's opinion. The ALJ's lone statement that Dr. Shires' opinion was not supported by the medical evidence or claimant's allegations does not constitute a sufficient analysis under 20 C.F.R. §§ 404.1527; 416.927. For instance, the ALJ failed to specify *what* evidence conflicted with Dr. Shires' opinion, nor did the ALJ attempt to evaluate Dr. Shires' opinion in accordance with the regulatory factors outlined in 20 C.F.R. §§ 404.1527; 416.927. More importantly, the ALJ wholly failed to develop the record with respect to claimant's physical limitations, as she asked no questions of the claimant in

this regard at the administrative hearing, despite the fact that Dr. Shires' opinion was in the record. *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993) (A social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Because the ALJ failed to properly analyze the medical evidence of record as outlined above, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma